***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. Neither appealing party has shown good ground to receive further evidence or rehear the parties or their representatives. However, based upon the evidence presented, the Full Commission has determined that the Deputy Commissioner's Opinion and Award should be modified.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Anthem Casualty Group was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on October 17, 1977, as a result of which the parties entered into the Form 21 Agreement. The plaintiff has received benefits pursuant to the Form 21 since October 18, 1977 through the present.
5. The plaintiff's average weekly wage was $320.00, which yields a compensation rate of $168.00 per week.
6. An Opinion and Award of the Full Commission was filed on October 6, 1998, requiring defendants to pay compensation to plaintiff's wife for attendant care services for eight hours per day, seven days per week, at the rate of $6.00 per hour, from February 20, 1997 and continuing. This Opinion and Award also provided that outside help shall be paid at $6.00 per hour if available at that rate or at a reasonable other hourly rate, if not available at the $6.00 rate.
7. The North Carolina Court of Appeals affirmed the Commission in a decision published at 136 N.C. App. 473, 525 S.E.2d 203 (2000).
8. The parties stipulated the following evidence into the record:
a. Plaintiff's medical records since 1996,
 b. Transcripts of testimony from prior hearings, including depositions, and
c. All prior Opinions and Award in this case.
 ***********
Based upon all the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the most recent hearing before the Deputy Commissioner, plaintiff was 70 years old and married. He has non-insulin dependent diabetes and high blood pressure. Helen London, plaintiff's wife of forty-nine years, was 67 years old. She has been unable to work outside the home since his accident. The Londons continue to have custody of their fourteen-year-old grandson Robert.
2. After the compensable injury of October 17, 1977, plaintiff was diagnosed with chronic brain syndrome secondary to post-traumatic damage with a right cerebral contusion. He has left hemiparesis, personality change, neurocognitive symptoms, and has been disabled from work since the date of the accident.
3. After the initial evaluation on May 6, 1997, Dr. C. Thomas Gualtieri, a board certified psychiatrist and expert in neuropsychiatry, found plaintiff to be ambulatory, verbal, oriented, able to drive, and completely independent. Dr. Gualtieri found that based upon plaintiff's level of functioning, he did not require attendant care on a twenty-four hour per day basis, but only needed daily supervision in the form of someone to check on him every few hours.
4. At the time of the initial hearing before the deputy commissioner, plaintiff was able to operate his motor vehicle, maintain a driver's license, and drive approximately thirty miles from his home in China Grove to the 3 flea markets in the Lexington vicinity each Saturday, where he sold coffee and sandwiches. He made change and deposited money at the bank, as well as obtained propane for the truck and food supplies for the items he sold. He also regularly drove his grandson to and from school. He bathed, groomed and dressed himself. Plaintiff reheated meals and prepared beverages for himself during the day, with reminder notes from Mrs. London on the operation of the appliances.
5. Based upon the competent evidence in the record at the February 2002 hearing, the Full Commission finds plaintiff capable of driving a motor vehicle, taking his grandson to and from school, purchasing gasoline, groceries and prepared foods, and performing limited lawn care tasks. Although plaintiff still drives to the flea markets, he no longer sells sandwiches. He is able to shower and dress himself, as well as reheat or prepare simple meals.
6. Since the date of the filing of the prior Opinion and Award, Mrs. London has developed arthritis in her back and hips, and also suffers from fibromyalgia. She is prescribed anti-depressants as a result of her emotional state, partially as a result of the stress of caring for her husband.
7. Since 1998, Mrs. London believes plaintiff's behavior has grown worse, including his obsessive-compulsive behavior. As a result, Mrs. London feels that she has less control over plaintiff than she previously did. She finds this perception frustrating.
8. Certified life care planning specialist Barbara Armstrong interviewed the Londons on August 31, 2000. Ms. Armstrong found plaintiff to have problems with concentration, ability to perceive danger, short-term memory loss, and slowed ability to process information. In addition, she noted that Mrs. London had stress and depression over her feelings about caring for her husband, as well as the general shift of greater responsibilities to her. Ms. Armstrong continues to recommend that plaintiff have unskilled attendant care on a twenty-four hour per day basis.
9. Ms. Armstrong was present in the courtroom for approximately four and one-half hours, with her actual testimony taking one hour and twelve minutes.
10. Between November 26, 2001 and December 2, 2001, Hinson Investigations performed surveillance of plaintiff and his wife. During this time, plaintiff was observed pushing a wheelbarrow across the road; driving his car to a convenience store, restaurants, church, a grocery store, a hardware store, a flea market, and his grandson's school; pushing a lawnmower; tinkering with a vacuum cleaner and pumping gasoline. In addition, Mrs. London is observed on two occasions, leaving plaintiff at home for a number of hours unattended, while she went shopping or to church.
11. On January 21, 2002, Dr. Gualtieri found plaintiff to have retained only mild to moderate residual symptoms as a result of the severe traumatic brain injury, until recently. With aging, plaintiff has more difficulty with gait and fine motor coordination, as well as more personality and neurocognitive problems. While plaintiff tended to underestimate his condition, Mrs. London overstates his problems to the doctor. Dr. Gualtieri observed that Mrs. London's clinical circumstances were deteriorating badly and some assistance may be needed. Plaintiff performed quite poorly in memory testing. However, his independent functioning was better than expected. Dr. Gualtieri noted that plaintiff was attended by his family physician, Dr. Revels, who ordered a CT scan in late 1998 for plaintiff due to Mrs. London's reports that plaintiff had impulse control problems and memory problems. On April 14, 1999, the scan revealed plaintiff to have cerebral atrophy most notably involving both frontal lobes.
12. In January of 2002, plaintiff was involved in two motor vehicle accidents, both of which were his fault. In the first accident, he hit the gas pedal instead of the brake while waiting in a line of cars to pick up his grandson from school. In the second accident, also at the student pick-up area at school, he pulled out in bright sunlight and hit a car, which he did not see. Therefore, plaintiff would benefit from a driving evaluation.
13. Greater weight is given to the recommendation for care by Dr. Gualtieri than is given to the opinion expressed by Ms. Armstrong. First, Dr. Gualtieri is a physician and a specialist in assessing head injuries. He has fairly and accurately assessed the Londons and their care needs, based upon the condition of both the plaintiff and his wife. Dr. Gaultieri's opinion is further supported by the surveillance evidence, to the extent that it demonstrates that Mr. London is capable of some independent functioning. A complete analysis of the evidence in this case yields the finding that Mrs. London would not benefit from being paid for more hours of attendant care services for her husband. The crux of the issue is that Mrs. London, and hence the plaintiff, would benefit from having the defendants hire someone to provide attendant care on a regular basis, in an effort to prevent Mrs. London's health and well-being from further deteriorating. To the date of the hearing before the Full Commission, neither plaintiff nor his wife has requested that defendants provide outside assistance.
14. Plaintiff's wife has continued to provide supervision and attendant care services for her husband from the date of the accident to the present. Although Mrs. London has been providing supervision, attendant care, and monitoring his clinical needs and medication for plaintiff for approximately 25 years and she continues to be physically capable of continuing to provide the supervision which is required, the competent evidence in the record supports a finding that it may not be in Mrs. London's best interests from a mental health perspective to continue to provide all the attendant care services for her husband. To that end, the Full Commission is of the opinion, based upon the evidence in the record, that it would be preferable for the defendants to retain an outside service to provide a home health aide worker to provide respite care for Mrs. London. Given the work requirements for most home health agencies, it is reasonably expected that the Londons could have an unskilled attendant to supervise plaintiff's taking of medications and provide minimal supervision during the day, to afford Mrs. London time to attend to other family business and affairs which she has been forced to assume as a result of her husband's injury, and over which she has expressed feelings of depression, anxiety and frustration. In the event that the attendant care service provider works for less than eight hours per day, seven days per week, the defendants should pay the difference for the hours to Mrs. London for her attendant care duties. Because of the transportation and scheduling issues involved, the Full Commission finds that in-home care is preferable to adult day care.
15. Plaintiff may benefit from having an unskilled attendant to maintain his supervision during the eight-hour per day, seven day per week basis, or for some lesser period of time, in order to afford Mrs. London a respite from providing care. The parties may benefit from contacting the local area agency on aging to determine service providers which may be available in the locality to assist with these services. In the event that a part-time care provider can be located, the defendants will pay the remaining hours of service to Mrs. London for the care which she provides, as found in the prior Opinion and Award and herein.
16. The Full Commission is unable to make a finding of fact as to the fair market value for unskilled attendant care services in plaintiff's area based on the evidence of record. Ms. Armstrong's testimony dealt with hourly rates of pay for home health-care agencies, which provideskilled attendant care services, the lowest published rate being for a Nurse's Aide I at $13.50 per hour during the week and $14.50 per hour during the weekend. It was Ms. Armstrong's experience that lower rates could be negotiated if the agency was promised a long-term case. The $13.50 to $14.50 per hour fees for skilled attendant care services through a professional agency include overhead that would not be incurred when the services are provided by plaintiff's wife and might not be charged if the attendant is self-employed.
17. Plaintiff requested the most current hearing before the Deputy Commissioner seeking a higher pay rate and more hours for unskilled attendant care being provided by plaintiff's wife. The evidence of record supported neither. Plaintiff provided no evidence showing that the $6.00 per hour being paid plaintiff's wife as an unskilled attendant should be increased. Since skilled attendant care is neither required nor being provided, all evidence concerning this is irrelevant to the issues presented.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. As a result of the admittedly compensable injury, plaintiff is entitled to have defendants pay for unskilled attendant care services for eight hours per day, seven days per week at the prevailing hourly rate from the date of this Opinion and Award. The hourly reimbursement rate may be increased periodically, as the prevailing wage increases in the market place. Plaintiff is entitled to have the defendants pay for services as may be provided by his wife, Helen London, for so long as she is fit and able to provide them, at a rate of $6.00 per hour. N.C.G.S. §§ 97-2(19), 97-25.
2. In the event defendants retain private attendant care services through either an individual or an agency to provide services for the plaintiff, or defendants provide some other type of respite care on a periodic basis for Mrs. London, and said services are provided for less than eight hours per day on a seven day per week basis, then the defendants shall pay the difference between those hours and the eight hour per day, seven day per week standard to Mrs. London for the attendant care services she continues to provide for her husband.
3. There is no evidence to support a finding that the defendants should be taxed with paying plaintiff's attorney's fees as a result of the conduct of the taking of Dr. Gaultieri's deposition. I.C. Rule 612(2). The defendants were ordered to pay the expert witness fee for said deposition, in accordance with the Commission Rule and general practice.
4. The continuing 25% of permanent and total disability compensation being paid to plaintiff's attorneys on an ongoing basis and the prior fees allowed on attendant care are sufficient compensation to them for continuing to monitor the cost of attendant care and is fair and reasonable. The 25% previously awarded on ongoing attendant care should be rescinded. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay compensation to plaintiff's wife for attendant care services provided on an eight hour per day, seven day per week basis at the previously determined $6.00 per hour. Defendants may provide services as outlined in Findings 14 and 15, and if so, must pay the actual cost of providing attendant care. However, it is reasonable to expect the defendants to adjust this rate periodically based upon the prevailing costs in the area.
2. Defendants shall pay the costs, including expert witness fee in amount of $600.00 to C. Thomas Gualtieri, M.D., and in the amount of $650.00 to Barbara Armstrong.
3. From and after the filing date of this Opinion and Award, defendants shall pay all of the ongoing compensation for attendant care without an offset for attorney fees.
4. Defendants are not to meet their attendant care obligations through adult day care.
This 31st day of January 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING IN A SEPARATE OPINION:
 S/____________ RENEE RIGGSBEE COMMISSIONER